UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN C.,

       Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of
 Social Security,

       Defendant.
_____

**DECISION
and
ORDER**

**20-CV-296F**
(**consent**)

APPEARANCES:   LAW OFFICES OF KENNETH R. HILLER
          Attorneys for Plaintiff
          KENNETH R. HILLER, and
          JEANNE ELIZABETH MURRAY, of Counsel
          6000 North Bailey Avenue
          Suite 1A
          Amherst, New York  14226

          JAMES P. KENNEDY, JR.
          UNITED STATES ATTORNEY
          Attorney for Defendant
          Federal Centre
          138 Delaware Avenue
          Buffalo, New York  14202
             and
          ROBERTA G. BOWIE, and
          CHRISTOPHER JOHN CARILLO
          Special Assistant United States Attorneys, of Counsel
          Social Security Administration
          Office of General Counsel
          1301 Young Street
          Suite 350
          Mailroom 104
          Dallas, Texas  75202

## **JURISDICTION**

On April 6, 2021, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 22)  The matter is presently before the

court on motions for judgment on the pleadings filed by Plaintiff on November 30, 2020 (Dkt. 17), and by Defendant on March 1, 2021 (Dkt. 21).


## BACKGROUND

Plaintiff John C. ("Plaintiff"), brings this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on December 27, 2016, for Social Security Disability Insurance ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges he became disabled on August 31, 2013, based on cervical spinal stenosis with neuropathy, low back condition, upper body neuralgia, left torn meniscus, and post-traumatic stress disorder ("PTSD").  AR[1] at 254, 280-81.  Plaintiff's application initially was denied on March 22, 2017, AR at 203-08, and at Plaintiff's timely request, AR at 208-09, on January 18, 2018, a hearing was held in Buffalo, New York before administrative law judge ("ALJ") Stephen Cordovani ("the ALJ").  AR at 77-116 ("first administrative hearing").  Appearing and testifying at the first administrative hearing via video conference from Jamestown, New York were Plaintiff, represented by Steven Ruotsi, Esq., and vocational expert Michael A. Klein ("Klein" or "the VE").

On February 9, 2018, the ALJ denied Plaintiff's claim, AR at 52-70 ("first ALJ decision"), and Plaintiff timely filed a request for review of the first ALJ decision by the Appeals Council, AR at 47-48.  On May 25, 2018, the Appeals Council denied Plaintiff's request for review of the first ALJ decision, AR at 1-7, thereby making the first ALJ decision the Commissioner's final determination on the claim at that time.  On July 24,

---

[1] References to "AR" are to the page numbers of the Administrative Record Defendant electronically filed in three parts on August 25, 2020 (Dkts. 10, 11 and 12).

2018, Plaintiff commenced his first action in this court challenging the Commissioner's determination on the first claim. *Crosby v. Comm'r of Soc. Sec.*, 18-CV-805FPG (W.D.N.Y.) ("first legal action"). On March 18, 2019, the parties stipulated to remand the matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings, 18-CV-805FPG, Dkt. 9, AR at 962-63, with judgment in Plaintiff's favor entered March 19, 2019, 18-CV-805FPG, Dkt. 10, AR at 964. On June 17, 2019, the Appeals Council issued a Remand Order vacating the first ALJ decision and remanded the matter for further proceedings consistent with this court's order including a new administrative hearing. AR at 965-69.

In accordance with the Appeals Council's remand order, on October 28, 2019, a new administrative hearing was held in Buffalo, New York before the ALJ. AR at 858-99 ("second administrative hearing"). Appearing and testifying at the second administrative hearing via video conference from Jamestown, New York were Plaintiff, represented by Megan D. Kale, Esq., and Klein, the VE. On November 27, 2019, the ALJ issued an unfavorable opinion ("second ALJ decision"). AR at 834-857. Plaintiff did not file for review by the Appeals Council, but on March 11, 2020, commenced the instant action seeking judicial review of the second ALJ decision.

On November 30, 2020, Plaintiff moved for judgment on the pleadings (Dkt. 17 ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 17-1) ("Plaintiff's Memorandum"). On March 1, 2021, Defendant moved for judgment on the pleadings (Dkt. 20) ("Defendant's Motion"), attaching Commissioner's Memorandum in Support of His Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief, Pursuant to Local Rule 5.5 (Dkt. 20-1)

("Defendant's Memorandum").  Filed on March 22, 2021 was Plaintiff's Response to
Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for
Judgement on the Pleadings (Dkt. 21) ("Plaintiff's Reply").  Oral argument was deemed
unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is
DENIED; the matter is REMANDED for calculation of benefits.


## FACTS[2]

Plaintiff John C. ("Plaintiff"), born December 11, 1974, was 42 years old when he
initially applied for disability benefits on December 27, 2016, and 44 years old as of
November 27, 2019, the date of the second ALJ decision.  Plaintiff lived with his wife
and teenage son.  AR at 864.  Plaintiff graduated high school where he attended regular
classes, completed a two-year automotive technologies program at BOCES, and also
completed military training in weapons and combat.  AR at 281.  Plaintiff's only work
history is 20 years as an infantryman with the United States Marines.  AR at 282, 305,
872-73.  In 2012, Plaintiff became sick while on active duty with what he maintains is a
"rare neurological disorder that the VA has been working to identify."  AR at 300.
According to Plaintiff, he "was stricken with this aliment overnight," which led to his
discharge from the military in August 2013.  AR at 305, 2120.

Plaintiff and his wife often provided care for their four-year old grandson who
stayed overnight at their house when his parents had to leave for work early.  AR at
865-69.  Plaintiff has a driver's license and drives three times a week, mostly locally

---

[2] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for
determining the pending motions for judgment on the pleadings.

including to medical appointments, to the grocery store, and to transport his grandson to pre-school, but sometimes to the Veterans Administration Hospital ("the VA") in Buffalo or Bath, New York, asserting he has to rest his arms on his legs while gripping the steering wheel.  AR at 869-72.  Plaintiff also uses a riding lawn mower to mow his one-acre yard, AR at 887, and with his neighbors' assistance, clears fallen trees from trails through the wooded portion of his 40-acre property with his neighbors doing most of the work.  AR at 886-890.  On rare occasions, Plaintiff fishes in a pond on his property.  AR at 891-92.  Plaintiff used to be an avid motorcycle rider, but has only ridden twice in the last seven years.  AR at 890.

Plaintiff received primary care through the VA hospitals in Buffalo and Bath where Plaintiff was treated by, *inter alia*, Sherry Withiam-Leitch, M.D. ("Dr. Withiam-Leitch"), nurse practitioner Rosetta Brown-Greaney ("NP Brown-Greaney"), and psychologists Deborah Marshall, Psy.D. ("Dr. Marshall"), and Karen Klementowski, Psy.D. ("Dr. Klementowski").  On October 17, 2013, NP Brown-Greaney completed a general medical separation health assessment disability benefits questionnaire in connection with Plaintiff's discharge from the Marines, indicating Plaintiff has symptoms attributable to peripheral nerve conditions in his upper extremities including constant severe bilateral pain, and severe bilateral paresthesia (burning, tingling sensation)  or dysethesia (sensation of burning or tightening).  AR at 2125-46.  On January 15, 2016, NP Brown-Greaney completed a disability benefits questionnaire regarding Plaintiff's hand and finger conditions, AR at 354-71, and regarding Plaintiff's cervical spine.  AR at 1932-43.  On September 13, 2016, Dr. Withiam-Leitch completed a disability benefits questionnaire related to Plaintiff's peripheral nerve condition.  AR at 346-54.  On

February 5, 2018, NP Brown-Greaney completed a disability benefits questionnaire regarding Plaintiff's peripheral nerve condition.  AR at 1423-40.  Disability benefits questionnaires concerning Plaintiff's PTSD were completed by Dr. Marshall on October 22, 2013, AR at 2119-24, December 28, 2015, AR at 549-53, and by Dr. Klementowski on September 6, 2016.  AR at 338-45.

In connection with his disability benefits claim, on March 9, 2017, Plaintiff underwent a psychiatric evaluation by Kristina Labarbera, Psy.D. ("Dr. Labarbera"), AR at 568-72, and an internal medicine examination by Rita Figueroa, M.D. ("Dr. Figueroa").  AR at 573-78.  On March 21, 2017, state agency psychologist A. Dipeolu, Ph.D. ("Dr. Dipeolu"), and state agency disability examiner Gary Ehlert, M.D. ("Dr. Ehlert") reviewed Plaintiff's medical records.  AR at 193-202.  After remand of the first ALJ decision, on July 13, 2019, Plaintiff underwent an internal medicine examination by Russell Lee, M.D. ("Dr. Lee").  AR at 1213-16.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[3] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59.

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

2.      **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity, 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting his mental or physical ability to perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal a listing in 20 C.F.R. Part 404, Subpt. P, Appendix 1 of the regulations, and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite his collective impairments, retains the "residual functional capacity ("RFC") to perform his past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform his PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through December 31, 2018, AR at 839, Plaintiff has not engaged in SGA since August 31, 2013, his alleged disability onset date ("DOD"), *id*., and has the severe impairments of disorder of the left knee, degenerative disc disease ("DDD") of the neck and low back, and mild sensorineural hearing loss in the right ear, *id*. at 839-40, but that there is no medical explanation supporting Plaintiff's reported symptoms of upper extremity pain, weakness, numbness and difficulty using his fingers, despite "[m]ultiple exams and tests of every nature, including neurological and rheumatological," such that the condition is not medically determinable, *id*. at 840-41, that Plaintiff's PTSD, although medically determinable, is not severe, *id*. at 841-43, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal in severity to a listed impairment.  AR at 843-44.  The ALJ further found that despite his impairments, Plaintiff retains the RFC for light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff can occasionally kneel, crouch, and crawl, cannot climb ladders, ropes or scaffolds, cannot work around hazards such as loud noise, unprotected heights, moving mechanical parts, or flammable liquids, and can occasionally use a telephone at work. AR at 844-50.  Plaintiff was unable to perform any PRW, AR at 850-51, but given his age, education, ability to communicate in English, and despite transferability of skills from his PRW not being relevant, is able to perform jobs existing in the national economy including as a marker, office cleaner, and weigher.  AR at 851-52.  As such, the ALJ found Plaintiff was not disabled as defined under the Act at any time through the date of the ALJ's decision.

In support of his motion, Plaintiff argues the ALJ erred at step two of the five-step sequential analysis in not considering as severe impairments Plaintiff's upper extremity impairment, Plaintiff's Memorandum at 17-27, as well as Plaintiff's PTSD. *Id*. at 27-30. In opposition, Defendant argues the findings contained in the various disability questionnaires completed by medical personnel at the VA are not binding on the Commissioner, Defendant's Memorandum at 8-9, the ALJ properly considered the opinions of the consultative examiners, *id*. at 10-12, the opinions of VA NP Brown-Greaney were not issued by an "acceptable medical source" and thus are not entitled to controlling weight, *id*. at 12, Dr. Lee's opinion was issued after December 31, 2018, *i.e.*, Plaintiff's date last insured and, as such, is not pertinent to the relevant period, *id*. at 12-13, Plaintiff thus fails to establish the ALJ erred at step two, *id*. at 13-15, and substantial evidence supports the ALJ's determination that PTSD did not qualify at step two as a severe impairment. *Id*. at 15-17. In reply, Plaintiff reiterates that the ALJ erred at step two in failing to find Plaintiff's upper extremity impairment and PTSD constitute severe impairments. Plaintiff's Reply at 1-3.

Preliminarily, the court addresses the numerous opinions of record by VA personnel, including psychologists Drs. Marshall and Klementowski, and Dr. Withiam Leitch. As Defendant argues, Defendant's Memorandum at 8-10, insofar as such opinions were rendered in connection with Plaintiff's VA disability benefits, the determinations that Plaintiff is disabled are not based on SSA policy or definitions of disability and, as such, are not entitled to controlling weight, although they remain evidence the ALJ may consider. *See Lohnas v. Astrue*, 510 Fed.Appx. 13, 14 (2d Cir. 2013) (holding ALJ with SSA did not err in failing to consider VA's determination that

claimant is disabled "[b]ecause the Commissioner is not bound by another agency's disability determination . . . .") (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975)).  Nevertheless, a plain reading of the second ALJ decision establishes the ALJ considered all these opinions.  *See* AR at 849 (giving partial weight to opinion of Dr. Withiam-Leitch), 850 (giving some weight to opinions of Drs. Klementowski and Marshall).

   Nor was the ALJ required to give controlling weight to the findings contained in the disability benefits questionnaires completed by NP Brown-Greaney who, as a nurse practitioner, is not considered an "acceptable medical source" under the relevant regulation in effect when Plaintiff filed his disability benefits claim, filed prior to March 27, 2017.  *See* 20 C.F.R. § 404.1502(a)(7) (defining a medical opinion as a statement from an "acceptable medical source" which does not include nurse practitioners); *see also Genier v. Astrue*, 298 Fed.Appx. 105, 108-09 (2d Cir. 2008) (holding ALJ was free to discount medical assessments made by physician's assistant and nurse practitioner in favor of objective findings of medical doctors) (citing 20 C.F.R. § 416.913(d)(1) (defining nurse practitioners and physician's assistants as "other sources" who opinions do not demand the same deference as those of a treating physician)).  Thus, although NP Brown-Greaney's treatments notes are evidence of Plaintiff's alleged impairments the ALJ may consider, the ALJ was not required to give any particular weight to NP Brown-Greaney's assessments of Plaintiff.

   With regard to Plaintiff's PTSD, the ALJ considered the condition to be a medically determinable impairment, although not severe because the evidence in the record failed to establish the condition poses more than minimal limitation to claimant's

ability to perform basic mental work activities.  AR at 841-42.  In support of this

determination, the ALJ relies on the fact that Plaintiff has not sought treatment for his

PTSD, AR at 841, as well as Dr. Labarbera's March 9, 2017 psychiatric evaluation.  *Id*.

(citing AR at 568-72).  In particular, upon examining Plaintiff, Dr. Labarbera diagnosed

Plaintiff with PTSD.  *Id*. at 571.  Nevertheless, Dr. Labarbera's evaluation of Plaintiff with

regard to the four mental functioning areas set forth in the regulations for evaluating

mental disorders referred to as the "paragraph B" criteria, failed to show Plaintiff with at

least one extreme or two marked limitations in the four areas of functioning, including

(1) a mild limitation in understanding, remembering, or applying information, particularly

with regard to recent and remote memory; (2) no limitation to interacting with others; (3)

mild limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in

adapting or managing himself,  AR at 841-42 (citing AR at 570).  Significantly, "'the

opinion of a treating physician is not binding if it is contradicted by substantial evidence,

and the report of a consultative physician may constitute such evidence.'" *Camille v.

Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (quoting *Mongeur v. Heckler*, 722 F.2d

1033, 1039 (2d Cir. 1983))).  Further, the report of a consultative psychologist also may

constitute substantial evidence.  *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir.

2011).  Accordingly, the ALJ's determination that Plaintiff's PTSD was not severe is

supported by substantial evidence in the record.

 Insofar as Plaintiff argues the ALJ erred in failing to determine Plaintiff has a

medically determinable severe impairment of his upper extremities, Plaintiff's

Memorandum at 17-27, Defendant maintains the ALJ did not err in failing to find a

severe upper extremities impairment because no such impairment is supported by any

medically acceptable clinical and laboratory diagnostic techniques from an acceptable medical source.  Defendant's Memorandum at 13-15.  As Defendant argues, Defendant's Memorandum at 15, it is Plaintiff's burden to establish he has a medically determinable impairments that accounts for his alleged limitations.  *Pazik v. Comm'r of Soc. Sec.*, 2020 WL 5511306, at * 3 (W.D.N.Y. Sept. 14, 2020).  As explained in Social Security Ruling ("SSR")[4]  96-4p, *Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations*, *available at* 1996 WL 374187 (SSA July 2, 1996) ("SSR 96-4p"), setting forth the framework for evaluating symptoms in the adjudication of disability benefits claims, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, *i.e.*, medical signs and laboratory findings."  SSR 96-4p, 1996 WL 374187, at * 1.  Further, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment."  *Id*. at * 2.  But, as Defendant concedes, Defendant's Memorandum at 15, Plaintiff's upper extremities symptoms may be attributable to his cervical DDD which the ALJ identified as a severe impairment.

Significantly, the ALJ did err in determining Plaintiff's cervical degenerative disc disease ("DDD") is a severe impairment, then failing to find such impairment posed any limitations to Plaintiff's ability to perform basic work activities.  In particular, the regulations instruct that to qualify as severe,

---

[4] "SSR" refers to Social Security Rulings which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).  After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521

As defined in the relevant regulations, a "severe impairment" is one that "significantly limits your physical or mental ability to do basic work activities. . . ."  20 C.F.R. § 404.1520(c).  "Basic work activities" include the ability and aptitude to perform most jobs and include, as relevant here, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. § 404.1522(b)(1).

Here, the ALJ's determination that Plaintiff's cervical DDD is a "severe impairment" establishes, pursuant to 20 C.F.R. § 404.1521, that such condition is "shown by medically acceptable clinical and laboratory diagnostic techniques."  The ALJ's determination that Plaintiff's cervical DDD impairment is "severe," implies such impairment "significantly limits" Plaintiff's ability to perform "basic work activities."  20 C.F.R. § 404.1520(c).  As such, upon finding Plaintiff's cervical DDD is a severe impairment, the ALJ was required to incorporate into the RFC determination in the second ALJ decision some limitations associated with such impairment, but failed to do so.  *See Laura C. v. Commissioner of Soc. Sec.*, __ F.Supp.3d __, 2021 WL 1147300, at * 5 (W.D.N.Y. Mar. 26, 2021) (remanding where the ALJ considered the plaintiff's Chron's disease and irritable bowel syndrome ("IBS") to be severe, but failed to explain how any limitations to the plaintiff's ability to perform basic work activities accounted for the plaintiff's symptoms attributed to Chron's disease and IBS such that court was "left

to speculate" with regard to the severity of the plaintiff's condition and thus deprived the court of any meaningful review); *Amanda F. v. Saul*, 2021 WL 236015, at * 6 (W.D.N.Y. Jan. 25, 2021) (holding the ALJ's failure to include in the RFC determination any limitations relating to the plaintiff's bilateral carpal tunnel syndrome, which the ALJ considered to be a severe impairment, was harmful error requiring remand for further administrative proceedings).

The upper extremity symptoms attributed to Plaintiff's cervical DDD include pain muscle weakness, paresthesia, and decreased sensation to light touching and have repeatedly been documented in Plaintiff's medical records. *See*, *e.g.*, AR at 347-38 (VA Peripheral Nerve Condition Disability Benefits Questionnaire completed by Dr. Witham-Leitch on January 15, 2016). Significantly, on April 26, 2017, Plaintiff underwent at VA Neurology Clinic a neurological evaluation for complaints of, as relevant here, bilateral upper extremity weakness, and severe pain with weakness to finger extensors. AR at 588-91. It was noted Plaintiff had an MRI of his cervical spine on September 27, 2016, that showed disc herniation at C6-C7 extending to the right neural foramen, secondary severe right and neural foraminal and lateral recess stenosis, and impinging on the right C7-C8 nerve roots. *Id*. Upon neurological examination, Plaintiff had bilateral web space atrophy (muscle wasting between thumb and index finger), and generalized upper extremity muscle wasting, dysmetria bilaterally on finger to nose testing (lack of coordination in touching finger to nose), and reduced sensation to light touch, sharp, and vibratory sense bilateral, which symptoms were found consistent with cervical myelopathy (spinal cord injury caused by compression) of a worsening pathology, with

Plaintiff's bilateral upper extremity weakness directly correlating with MRI cervical findings.  *Id*.

Findings made by Dr. Figueroa who consultatively examined Plaintiff on Mary 9, 2017, are consistent with Plaintiff's complaints.  AR at 573-77.  In particular, Dr. Figueroa reported that on his upper extremities, pinprick was not sensed in any portion of Plaintiff's left arm, and only in the triceps of Plaintiff's right arm, AR at 576, proprioception (body's inability to perceive its own position in space) and two-point discrimination (intended to assess if a patient is able to identify two close points on a small area of skin) were absent, *id*., there was atrophy of Plaintiff's right shoulder and right biceps, *id*. at 577, and an overall decrease in tonicity (muscle tone).  *Id*.  Dr. Figueroa diagnosed Plaintiff with diffuse myalgia and muscle weakness of unknown etiology, and cervicalgia (neck pain), stating Plaintiff would have difficulty with activities requiring moderate exertion, and moderate limitations to repetitive bending, lifting, and carrying, as well as repetitive reaching, pushing and pulling.  *Id*.  Upon another consultative examination by Dr. Lee on July 31, 2019, Plaintiff's primary complaint was cervical nerve impingement bilaterally at C7-C8, constant pain in his arms, burning pain from his elbows to his fingertips, which worsened when Plaintiff raised his arms, and an inability to hold onto items.  AR at 1213-16.  After examining Plaintiff, Dr. Lee diagnosed nerve impingement of C7-C8 and unknown muscle disorder, stating Plaintiff has moderate limitations for activities involving lifting, reaching above his head, and bending.  *Id*.  In short, Plaintiff's medical providers, including several physicians, repeatedly found Plaintiff with muscle weakness, pain, and decreased sensation in his bilateral upper extremities, and attributed such findings to Plaintiff's cervical DDD.  The

ALJ's desire for more persuasive evidence such as diagnostic medical tests establishing a diagnosed impairment of Plaintiff upper extremities impairment separate from the severe impairment of cervical DDD is understandable; however, the record establishes both Plaintiff's treating and consultative sources repeatedly attribute Plaintiff's symptoms, including subjective symptoms such as pain and weakness, as well as objectively determined symptoms including muscle wasting and paresthesia relative to his upper extremities to his cervical DDD.  The ALJ cannot insist on objective medical tests to confirm subjective symptoms where no such tests exist.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (holding ALJ erred in requiring "'objective' evidence for a disease that eludes such measurement" such that objective findings were not required to find the claimant disabled by fibromyalgia).

Pursuant to § 205 of the Act, 42 U.S.C. § 405(g), courts may remand cases upon finding the Commissioner "applied erroneous legal standards and arrived at a determination unsupported by substantial evidence."  *Aubeuf v. Schweiker,* 649 F.2d 107, 116 (2d Cir.1981).  "The fourth sentence of § 405(g) authorizes a court to enter 'a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.'"  *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)); *Raitport v. Callahan,* 183 F.3d 101, 103–04 (2d Cir.1999).  Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, the proper course is a remand to the Commissioner for further proceedings.  *Rosa, supra,* at 82–83 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980)).  Where, however, there is no apparent basis to conclude that a more complete record might support the Commissioner's decision, a

17

remand limited to calculation of benefits is in order.  *Rosa, supra* (citing *Balsamo v. Chater,* 142 F.3d 75, 82 (1998)); *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987).

Although Plaintiff requests remand for further administrative proceedings, Plaintiff's Memorandum at 30; Plaintiff's Reply at 3, where, as here, there are no gaps in the administrative record, remand for further development of the record would be futile because it is unlikely that any objective medical testing will definitively establish the source of Plaintiff's upper extremities symptoms.  Further, as discussed, Discussion, *supra*, at 14-16, the ALJ erroneously discredited Plaintiff's subjective complaints regarding his cervical DDD despite a plethora of medical evidence attributing such complaints to Plaintiff's cervical DDD, substantially undermining the ALJ's decision, which, as discussed, Discussion, *supra*, at 16-17, is heavily predicated on the discrediting of such complaints based on the lack of diagnostic medical tests corroborating the complaints.  Moreover, a plain review of the transcript of the first administrative hearing reveals the ALJ posed hypotheticals to the VE that included limitations consistent with Plaintiff's cervical DDD, specifically, limited reaching, fingering, and handling, which limitations the VE testified would preclude any competitive employment.  AR at 114.  Similarly, at the second administrative hearing, the ALJ again posed a hypothetical to the VE that included limiting Plaintiff to occasional handling and fingering, with the VE responding such limitations would preclude performance of all competitive work.  AR at 897-98.  The record thus establishes that remand for further administrative proceedings, including a new hearing with the ALJ required to pose to the VE another hypothetical incorporating restrictions attributed to Plaintiff's cervical DDD would be futile.  *See Barbara K. v. Comm'r of Soc. Sec.*, 2021

WL 1163149, at * 17-18 (N.D.N.Y. Mar. 26, 2021) (remanding for calculation of benefits where the VE's hearing testimony in response to the ALJ's hypothetical that included limitations attributed to all of the plaintiff's severe impairments, including fibromyalgia and neuropathy, was that the plaintiff would not be capable of performing any substantial gainful employment available in the national economy) (citing cases).

Accordingly, the ALJ's finding that Plaintiff was not disabled between August 31, 1993, his alleged DOD, and December 31, 2018, his date last insured, is not supported by substantial evidence in the record. As such, remand solely for calculation of benefits is proper.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 17) is GRANTED; Defendant's Motion (Dkt. 20) is DENIED; the matter is REMANDED for calculation of benefits. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        April 20th, 2021
              Buffalo, New York

19